# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**CANDI QUINN, as Administratrix
of the Estate of Richard G. Quinn,
deceased,**

      **Plaintiff,**

**v.**      //    CIVIL ACTION NO. 1:09cv82
                      (Judge Keeley)

**GARDEN STATE LIFE INSURANCE
COMPANY,**

      **Defendant.**

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. 15), DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. 20) AND DISMISSING CASE WITH PREJUDICE

The plaintiff, Candi Quinn ("Mrs. Quinn"), filed a motion for summary judgment, seeking to establish that a policy of life insurance issued by the defendant, Garden State Life Insurance Company ("Garden State"), to Mrs. Quinn's husband, Richard G. Quinn ("Mr. Quinn"), was in effect at the time of his death and that she is entitled to the policy's $100,000 death benefit. Garden State also filed a motion for summary judgment, arguing that the policy was not in effect at the time of Mr. Quinn's death, and, in the alternative, that is not obligated to pay the death benefit due to Mr. Quinn's material misrepresentations on his applications for reinstatement.

For the reasons explained in this memorandum opinion and order, the Court concludes that Garden State's policy was not in effect at the time of Mr. Quinn's death, and, alternatively, it concludes that Garden State would have had no obligation to pay on the policy had it been in effect. Accordingly, it **GRANTS** Garden

State's Motion for Summary Judgment (dkt. 15), **DENIES** Mrs. Quinn's Motion for Summary Judgment (dkt. 20), and **DISMISSES** this case **WITH PREJUDICE.**

### I. FACTUAL BACKGROUND

The parties do not dispute the factual history of this case. Mr. Quinn first purchased a term life insurance policy from Garden State on January 9, 2001. He failed to make required premium payments, resulting in the policy's lapse on January 9, 2007.[1] He then applied for reinstatement on March 10, 2007, and Garden State reinstated the policy on April 10, 2007.

In his March 10 application for reinstatement, Mr. Quinn answered "no" to a question asking whether, since the original issuance of the policy, he had "[c]onsulted a physician for, been diagnosed with or received treatment for any physical impairment, sickness, surgery, mental disorder, injury, or drug or alcohol abuse." Unfortunately, this response was not true. In December 2006, Mr. Quinn had attempted to kill himself by taking an overdose of blood pressure medication and alcohol, which resulted in a three-day hospitalization.

On September 11, 2007, Mr. Quinn's policy again lapsed for non-payment. He applied for reinstatement on October 14, 2007, and,

---

[1] Mr. Quinn's policy also lapsed for non-payment in 2001.

on this reinstatement application, again failed to disclose his suicide attempt, drug and alcohol abuse, or hospitalization. He did note, however, that he suffered from herniated disks in his back and depression.

On November 24, 2007, Mr. Quinn died in a motor vehicle accident. Having no knowledge of Mr. Quinn's death, Garden State reinstated the policy effective November 28, 2007. Mrs. Quinn, the beneficiary of her husband's policy, submitted a claim for benefits, which Garden State denied on the basis that Mr. Quinn had made material misrepresentations in his October 14 application for reinstatement. Additionally, it noted that it had not reinstated the policy as of the date of Mr. Quinn's death.

Mrs. Quinn brought this suit in the Circuit Court of Monongalia County, West Virginia, seeking payment of the $100,000 death benefit contained in the policy.[2] After Garden State removed the case to this Court, both parties moved for summary judgment to determine whether there is coverage for Mr. Quinn's death under the policy.

---

[2] Garden State argues that Mrs. Quinn improperly brought this action as the administrator of Mr. Quinn's estate. As the policy beneficiary, Mrs. Quinn was entitled to sue for benefits in her own name. However, because Mrs. Quinn has clearly had a full opportunity to litigate her claim, the Court concludes that its judgment in this case binds her in both her individual and representative capacities.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where, as in this case, no material question of fact exists and the moving party is entitled to judgment as a matter of law. The Court is mindful of its duty to give the non-moving party the benefit of any inferences or differences of opinion that may arise from the facts. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986).

## III. ANALYSIS

As explained below, Garden State is entitled to summary judgment on two distinct grounds. First, it is clear that no policy was in effect at the time of Mr. Quinn's death. Additionally, because Mr. Quinn materially misrepresented the facts of his health status on his applications for reinstatement, Garden state has no duty to pay on the fraudulently obtained policy.

### A. No Policy Was in Effect at the Time of Death.

It is undisputed that Garden State did not reinstate Mr. Quinn's policy until November 28, 2007, four days after his death. Mrs. Quinn argues that, under the doctrine of reasonable expectations, she should receive benefits because Garden State accepted Mr. Quinn's premium payment along with his application for reinstatement.

Garden State correctly points out, however, that this doctrine only operates where an ambiguity exists in a policy document. See Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc., 356 S.E.2d 488, 497 (W. Va. 1987)(overruled on other grounds by Potesta v. U.S. Fidelity & Guar. Co., 504 S.E.2d 135 (W. Va. 1998)). Here, Mr. Quinn's October 14 application for reinstatement contained the following language: "Reinstatement of this policy shall take effect only when this application has been approved." Even when the Court views this language in the light most favorable to Mrs. Quinn, this statement is unambiguous. As Garden State did not approve the application until November 28, the policy was not in effect on November 24, the date of Mr. Quinn's death.

### B. Mr. Quinn Made Material Misrepresentations.

Even if the Court were to conclude that Garden State had created the expectation of coverage on the date of Mr. Quinn's death, his false answers and active withholding of material information would preclude Mrs. Quinn's recovery in this case. See Syl. Pt. 4, Powell v. Time Ins. Co, 382 S.E.2d 342 (W. Va. 1989) ("In order to be fraudulent under W. Va. Code, 33-6-7(a) (1957), misrepresentations, omissions, concealments of facts, and incorrect statements on an application for insurance by an insured must be knowingly made with an intent to deceive the insurer and relate to

5

material facts affecting the policy."). Both the March 10 and October 14 applications for reinstatement contain material falsehoods.

Mrs. Quinn concedes that the March 10 application was "inaccurate." She argues, however, that the March 10 application is not relevant to this case, because the October 14 application provides that the incontestability provisions in the policy would restart only for matters contained in that application. However, the March 10 application restarted the incontestability provisions for statements made in <u>that</u> application. By the policy's terms, the statements in the March 10 application were contestable for two years. Because less than two years passed between the March 10 application and the May 29, 2008, denial of benefits, Garden State was entitled to deny benefits based on the misstatements in the March 10 application.

Moreover, the false statements of the October 14 application alone are sufficiently serious to support Garden State's denial of benefits. Mrs. Quinn argues that the responses on the October 14 application were sufficient, because Mr. Quinn answered that he had received treatment and consulted a physician, and disclosed his back pain and depression. The directions to give "full details," she argues, are so vague as to relieve the lay applicant from the duty to disclose specific aspects of his health problems.

The application, however, specifically asked for information regarding drug and alcohol abuse, which, although clearly applicable, Mr. Quinn did not disclose. Mr. Quinn made no attempt to put Garden State on notice of his serious problems, but, instead, intentionally misled the company to believe that his health history was unremarkable.

Mrs. Quinn does not contest the Garden State's contention that it would not have issued a life insurance policy to Mr. Quinn had he made it aware of his history of suicide attempts and drug and alcohol abuse. Indeed, the Court cannot conclude that any reasonable insurance company would issue a policy of life insurance to an individual who had recently attempted to take his own life by overdosing on prescription drugs and alcohol. Thus, the Court concludes that, under W. Va. Code § 33-6-7, Garden State is relieved of its contract liability due to Mr. Quinn's fraudulent applications.

## CONCLUSION

For the reasons discussed, the Court **GRANTS** Garden State's motion for summary judgment (dkt. 15), **DENIES** Mrs. Quinn's motion for summary judgment (dkt. 20), **DISMISSES** this case **WITH PREJUDICE** and directs the Clerk to retire the case from the docket of the Court. Pursuant to Fed. R. Civ. P. 58, the Court directs the Clerk

to enter a separate judgment order and to transmit copies of both orders to counsel of record.

It is so **ORDERED.**

DATED: February 24, 2010

/s/ Irene M. Keeley
UNITED STATES DISTRICT JUDGE